[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-13048

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 16, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-80063-CR-DTKH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

QUINTON BANNISTER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 16, 2008)**

Before TJOFLAT and BLACK, Circuit Judges, and RESTANI,* Judge.

PER CURIAM:

---

* Honorable Jane A. Restani, United States Court of International Trade Chief Judge, sitting by designation.

Quinton Bannister was convicted by a jury of multiple counts arising out of three armed bank robberies, which occurred between April and October 2004 along the eastern coast of Florida.[1] Bannister was sentenced to 946 months' imprisonment. On appeal, he challenges (1) the sufficiency of the evidence on all counts, (2) the district court's refusal to sever counts, (3) several evidentiary admissions, (4) the jury instructions used at his trial, and (5) the calculation and reasonableness of his sentence. With the benefit of briefing, oral argument, and a careful review of the record, we affirm Bannister's convictions and sentence.

## I. SUFFICIENCY OF THE EVIDENCE

This Court reviews the sufficiency of evidence *de novo.* *United States v. Morris*, 20 F.3d 1111, 1114 (11th Cir. 1994). "We examine the evidence in the light most favorable to the government and must affirm a conviction if any reasonable construction of the evidence would permit the jury to find a defendant guilty beyond a reasonable doubt." *Id.* "[A] guilty verdict will not be disturbed on appeal unless no reasonable trier of fact could have found guilt beyond a reasonable doubt on the evidence before it." *United States v. Baker*, 432 F.3d

---

[1] Specifically, Bannister was convicted of one count of bank robbery, in violation of 18 U.S.C. § 2113(a) and (d) (Count 2); three counts of conspiracy to commit bank robbery, in violation of 18 U.S.C. § 371 (Counts 1, 5 & 8); three counts of conspiracy to commit a Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Counts 3, 6 & 9); and three counts of using or carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A) (Counts 4, 7 & 10).

1189, 1232 (11th Cir. 2005).

Bannister argues there was insufficient evidence to convict him on all counts because (A) co-conspirator testimony was not reliable enough to convict him, (B) insufficient evidence was presented to prove the existence of, and Bannister's participation in, a conspiracy, and (C) errors of fact and law were made in holding him vicariously liable for the use of firearms by his co-conspirators.

*A.     Co-conspirator Testimony*

It is well established that credibility determinations are the exclusive province of the jury. *United States v. Calderon*, 127 F.3d 1314, 1325 (11th Cir. 1997). And this Circuit has long upheld the propriety of the government's practice of trading sentencing recommendations for the cooperation of witnesses. *United States v. Lowery*, 166 F.3d 1119, 1124 (11th Cir. 1999). Evidence is not legally insufficient merely because it comes from the testimony of "an array of scoundrels, liars and brigands." *United States v. Hewitt*, 663 F.2d 1381, 1385 (11th Cir. 1981) (citations omitted). Even the uncorroborated testimony of a single accomplice may support a conviction if it can reasonably be believed.

*United States v. Sabin*, 526 F.2d 857, 859 (5th Cir. 1976).[2]

In light of the above cited authorities, we find unpersuasive Bannister's argument that the six accomplices that testified against him were not reliable enough to support the convictions. Bannister had the opportunity to cross examine every witness who testified against him; their flaws and motivations were made plain to the jury. The district court also cautioned the jury that "a witness who hopes to gain more favorable treatment may have a reason to make a false statement because the witness wants to strike a good bargain with the Government." On appeal, Bannister does not point to any specific witness testimony that was factually inconsistent or flawed in a way that it could not reasonably be believed by the jury.

In the case of the First National Bank robbery, at least three accomplices testified to Bannister's involvement; furthermore, Bannister's DNA was found on a pillowcase used by the SunTrust robbers, and his fingerprints were found inside a safe containing bait bills from the First National robbery. In the case of the Colonial Bank robbery, the testimony of Lotod Newby supported Bannister's conviction. And finally, the Harbor Federal Savings conviction was supported by

_____

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

4

both the testimony of Michael Lewis and the bait bills found in Bannister's possession on the day of the robbery. The jury was entitled to believe the accomplice testimony presented at trail, and that testimony indicated Bannister participated in each crime for which he was convicted.

B.    *Conspiracy Charges*

Bannister also claims there is insufficient evidence to show he agreed to participate in conspiracies in violation of 18 U.S.C. §§ 371 and 1951(a). However, "[t]he existence of an agreement may be proven by circumstantial evidence, including 'inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme.'" *United States v. Silvestri*, 409 F.3d 1311, 1328 (11th Cir. 2005) (quoting *United States v. Tamargo*, 672 F.2d 887, 889 (11th Cir. 1982)). Given the coordinated nature of the robberies—multi-member teams of masked, armed men robbing banks—evidence of Quinton Bannister's active participation in each of those robberies is enough to infer both the existence of a conspiracy and an agreement to participate. In each case, testimony places Bannister at the site of the robbery. At First National, Bannister was identified standing in the bank with an assault rifle. At Colonial Bank and Harbor Federal Savings, the evidence showed Bannister played a leadership role in planning the robberies and in each case drove the nearby getaway car. Overall, the accomplice

5

testimony paints a picture of Bannister being deeply involved in each of the conspiracies for which he was convicted.

## C. Firearm Convictions

Bannister argues the evidence does not support a conviction under 18 U.S.C. § 924(c)(1)(A) for using or carrying a firearm during the commission of a violent crime. As a matter of law, Bannister argues he could not be held vicariously liable for the acts of his co-conspirators. Factually, he argues there is no evidence that he used or carried a firearm. On this basis he challenges Counts 4, 7 and 10 of the indictment. Under 18 U.S.C. § 924(c), "it is unlawful for 'any person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States' to use or carry a firearm or for any person 'in furtherance of any such crime,' to possess a firearm." *United States v. Diaz*, 248 F.3d 1065, 1099 (11th Cir. 2001) (quoting 18 U.S.C. § 924).

Bannister's legal argument—that he cannot be held vicariously liable for his co-conspirators' acts—is of little consequence to his firearm conviction for the First National Bank robbery (Count 4). Jon Michael Etheredge identified Bannister carrying an assault rifle in a security photo taken during the First National robbery. For this reason, sufficient evidence exists to support a conviction for Bannister's use of a firearm during the commission of the robbery.

6

As to the other bank robberies, Bannister's legal argument is foreclosed by this Circuit's precedent. It has long been recognized that "a co-conspirator can be punished for a substantive offense committed by one of his co-conspirators so long as the offense is reasonably foreseeable and is committed in furtherance of the conspiracy." *United States v. Caporale*, 806 F.2d 1487, 1508 (11th Cir. 1986) (citing *Pinkerton v. United States*, 66 S. Ct. 1180, 1184 (1946)). This Circuit has extended so-called *Pinkerton* liability to § 924(c) offenses: "[C]riminal defendants remain liable for the reasonably foreseeable actions of their coconspirators—including the using or carrying of a firearm during the commission of a crime of violence." *Diaz*, 248 F.3d at 1099; *see also United States v. Bell*, 137 F.3d 1274, 1275 (11th Cir. 1998) (holding co-conspirator liability for a § 924(c) offense may be established under *Pinkerton*).

As to the Colonial Bank robbery (Count 7), sufficient evidence exists to conclude Quinton Bannister planned the armed robbery of the bank with his brother Reginald. According to Lotod Newby, he drove Quinton and Reginald up I-95 for the purpose of selecting a target bank to rob. Furthermore, Newby testified that on the day of the robbery he and other co-conspirators met in the back of a shopping plaza nearby the bank and retrieved guns from a car Quinton Bannister was driving. Based on this evidence, it was reasonably foreseeable to

7

Bannister that guns would be used in the robbery; therefore, it was appropriate to hold him vicariously liable for the use of those guns in the Colonial Bank robbery.

As to the Harbor Federal Savings robbery (Count 10), sufficient evidence exists to conclude Quinton Bannister was the ring leader. The evidence revealed he recruited Michael Lewis to commit the robbery, he gave instructions to each member of the robbery team regarding their role in the conspiracy, and he acted as the getaway driver. Here too, it was foreseeable to Bannister that guns would be used in carrying out the robbery; therefore, it was appropriate to hold him vicariously liable for the use of those guns in the Harbor Federal Savings robbery.

In conclusion, sufficient evidence exists to support Bannister's convictions on all counts.

## II. MOTION TO SEVER COUNTS

The denial of a motion to sever is reviewed for abuse of discretion. *United States v. Smith*, 918 F.2d 1501, 1509 (11th Cir. 1990). The court "will not reverse the denial of a severance motion absent a clear abuse of discretion resulting in compelling prejudice against which the district court offered no protection." *United States v. Hersh*, 297 F.3d 1233, 1244 (11th Cir. 2002) (citing *United States v. Walser*, 3 F.3d 380, 385 (11th Cir. 1993)). Bannister argues the district court abused its discretion and denied him a fair trial when it denied his motion to sever

the counts related to the three bank robberies into separate trials. He notes each bank robbery involved three distinct conspiracies made up of different groups of people with different objectives.

We conclude the district court did not abuse its discretion in refusing to sever the three bank robberies. Any prejudice Bannister may have experienced was mitigated by the district court's limiting instructions to the jury and outweighed by the interest of judicial economy.

## III. EVIDENTIARY RULINGS

Evidentiary rulings are reviewed for abuse of discretion. *United States v. Baker*, 432 F.3d 1189, 1202 (11th Cir. 2005). Bannister complains of several evidentiary admissions, which he argues cumulatively warrant a mistrial. We disagree. A mistrial is only granted when the defendant's substantial rights have been prejudicially affected. "This occurs when there is a reasonable probability that, but for the [admissions], the outcome of the trial would have been different." *United States v. Newsome*, 475 F.3d 1221, 1227 (11th Cir. 2007). None of the admissions of evidence discussed below rise to that level, either individually or cumulatively.[3]

---

[3] We also conclude no new trial is warranted even when, as Bannister requests, we view the evidentiary rulings in combination with the district court's decision not to sever counts.

*A.     SunTrust Bank*

Bannister contests the admission of evidence regarding the uncharged SunTrust Bank robbery, which occurred on April 14, 2004, the same day as the First National Bank robbery. The two robberies occurred nearly simultaneously as part of a plan to cause chaos for the police. The participants in both robberies prepared for the robberies together the evening before, and the two teams met back in the same apartment after each carrying out their assigned robbery in an identical manner. We conclude the SunTrust and First National robberies were inextricably intertwined; therefore, evidence of the SunTrust robbery was properly admitted. *See United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) ("Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive[,] and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." (quoting *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998))).

*B.     Washington Mutual Bank*

Bannister argues the district court improperly admitted evidence regarding the uncharged Washington Mutual Bank robbery under Federal Rule of Evidence 404(b). We conclude there was no reversible error in the admission of this

10

evidence; even assuming, arguendo, that the district court erred, its admission was harmless. The properly admitted evidence against Bannister provided ample support for every crime of which he was convicted. *See United States v. Burgest*, 519 F.3d 1307, 1311 (11th Cir. 2008).

C.    *Co-conspirators' gold teeth and association with the "Knotty Heads"*

Bannister challenges the admission of testimony from co-conspirators' relating to the significance of having gold teeth and Bannister's association with a group known as the "Knotty Heads." Bannister contends this evidence should not have been admitted because it was irrelevant, hearsay, and unduly prejudicial. Although Bannister complains of a hearsay problem, he does not explain why the statements that were made regarding gold teeth and group membership are hearsay, as opposed to testimony by fellow Knotty Head members with personal knowledge of the group's practices. As to relevance and prejudice, the testimony was relevant to demonstrate Bannister's membership in the Knotty Heads and status within the group. This information constituted circumstantial evidence of Bannister's level of involvement in the robberies. *See United States v. Bradberry*, 466 F.3d 1249, 1253-54 (11th Cir. 2006) (noting district court has discretion to admit gang membership if it is relevant evidence of association). In this case, the prejudicial value of the evidence did not outweigh its probative value; therefore,

11

the district court did not abuse its discretion. We conclude the evidence was properly admitted, and in any event, there was no reversible error.

D. *Use of robbery proceeds to pay attorney's fees*

Bannister contests the admission of evidence that bank robbery proceeds were used to pay an attorney for the representation of Quinton Bannister's brother, Juan Bannister. The Government notes evidence of payments of $49,000 in cash to Juan's attorney after the First National Bank robbery served as corroborating evidence and gave Bannister a motive to continue robbing banks. There was no reversible error in the admission of this evidence.

E. *Al Minus's testimony*

Bannister assigns error in two respects to the testimony of Al Minus. First, Bannister complains that Minus referred to the death of his brother, Derrick Minus, who was killed in prison. We conclude, as did the district court, that Minus's testimony about the death of his brother was not prejudicial to Bannister. Second, Bannister complains Minus testified about speaking to a detective on March 27, 2004—prior to any of the charged robberies occurring—"regarding bank robberies" and said he provided the detective information about Quinton Bannister. Bannister is correct that this testimony should not have been allowed given that it predates any of the charged indictments; however, the district court

immediately recognized the problem and interrupted the testimony to give the following curative instruction:

> Let me stop for a minute. Ladies and gentlemen, I am going to ask you to disregard, to strike and not consider the testimony of Mr. Minus regarding anything that he says that he told the police about Quinton Bannister. Okay. On March 27th, 2004.

The district court's instruction to the jury cured any possible prejudice.

In conclusion, we find no reversible error in the testimony of Al Minus.

## IV. JURY INSTRUCTIONS

"We review jury instructions *de novo* to determine whether they misstate the law or mislead the jury to the prejudice of the objecting party." *United States v. Simpson*, 228 F.3d 1294, 1298 (11th Cir. 2000). Bannister argues the district court committed reversible error by instructing the jury on the charges using the disjunctive, as opposed to using the indictment's language which is phrased in the conjunctive—for instance, the jury was told it could convict if it found the use of violence *or* intimidation, as opposed to the indictment's language, which accused Bannister of using violence *and* intimidation.

"Quite simply, the law is well established that where an indictment charges in the conjunctive several means of violating a statute, a conviction may be obtained on proof of only one of the means, and accordingly the jury instruction

13

may properly be framed in the disjunctive." *Id.* at 1300. We conclude the district court did not err by instructing the jury in the disjunctive.

Bannister also maintains the jury should not have been able to convict him of firearm charges without finding he "personally and actually brandished the firearm during the robbery." This argument is merely another attempt by Bannister to avoid *Pinkerton* liability for the foreseeable acts of his co-conspirators. As discussed earlier, this Circuit has extended *Pinkerton* liability to § 924(c) offenses. *See Diaz*, 248 F.3d at 1099. Accordingly, we conclude the jury was instructed correctly.

## V. SENTENCING

Bannister also appeals his total 946-month sentence. First, he maintains the district court should not have imposed consecutive sentences because he should not have been convicted of possessing and brandishing a firearm. Second, Bannister asserts that application of the career offender provision was "excessive and unreasonable," and a variance from the advisory guidelines was warranted, "or a lesser statutory sentence would suffice." Third, he asserts that his total sentence and consecutive sentences were unreasonable and greater than necessary to accomplish the goals of sentencing under 18 U.S.C. § 3553(a); he also complains he did not receive an individualized sentence.

14

As to Bannister's first sentencing claim, the imposition of consecutive rather than concurrent sentences is "an issue of law subject to plenary review." *United States v. Perez*, 956 F.2d 1098, 1101 (11th Cir. 1992). Section 924(c)(1)(A) provides for a five-year minimum sentence for using or carrying a firearm in furtherance of a crime of violence. 18 U.S.C. § 924(c)(1)(A)(i). If a firearm is brandished, the minimum sentence is seven years. *Id.* § 924(c)(1)(A)(ii). "In the case of a second or subsequent conviction under this subsection," the defendant faces a minimum sentence of 25 years' imprisonment, which shall not run concurrently with any other term of imprisonment imposed on the person. *Id.* § 924(c)(1)(C)(i), (D)(ii). Furthermore, § 5G1.2 of the Sentencing Guidelines indicates "the sentence to be imposed on the 18 U.S.C. § 924(c) . . . count shall be imposed to run consecutively to any other count." U.S.S.G. § 5G1.2(e)(2). Upon review of the record, presentence investigation report, and sentencing transcript, and upon consideration of the briefs of the parties, we discern no reversible error. Bannister was convicted for § 924(c) offenses because he personally used a firearm in the First National Bank robbery, and because he was also liable for the acts of his co-conspirators when they used weapons in the Colonial Bank and Harbor Federal Savings robberies, *see Diaz*, 248 F.3d at 1099. Therefore, the district court did not err in imposing consecutive sentences, as was

15

recommended by the Sentencing Guidelines and required by the statute. *See* 18

U.S.C. § 924(c); U.S.S.G. § 5G1.2(e)(2).

Second, turning to Bannister's complaint regarding being sentenced as a

career offender, Bannister was properly considered a career offender because he

had two prior convictions for battery against law enforcement officers. *See*

U.S.S.G. § 4B1.1(a); *United States v. Glover*, 431 F.3d 744, 749 (11th Cir. 2005)

(noting battery on a law enforcement officer is a crime of violence).

Third, post-*Booker*,[4] a district court, in determining a reasonable sentence,

must correctly calculate the sentencing range under the Guidelines and then

consider the factors set forth in § 3553(a). *See United States v. Talley*, 431 F.3d

784, 786 (11th Cir. 2005). We review a defendant's ultimate sentence for

reasonableness in light of the § 3553(a) factors. *See United States v. Winingear*,

422 F.3d 1241, 1246 (11th Cir. 2005). The party challenging the sentence "bears

the burden of establishing that the sentence is unreasonable in the light of both

th[e] record and the factors in section 3553(a)." *Talley*, 431 F.3d at 788. In this

case, the district court correctly calculated the advisory Guidelines range, and the

sentencing transcript demonstrates the court considered Bannister's arguments and

the § 3553(a) factors. Ultimately, the district court sentenced Bannister at the low

---

[4] *United States v. Booker*, 125 S. Ct. 738 (2005)

end of the applicable guideline range, and Bannister has failed to demonstrate the sentence he received is unreasonable.

Accordingly, we conclude the district court did not err in sentencing Bannister.

## VI.  CONCLUSION

The convictions and sentence of Quinton Bannister are **AFFIRMED**.